# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4023 | **DATE** | 11/2/2004 |
| **CASE TITLE** | Depuy, Inc. vs. Zimmer Holdings, Inc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motions for summary judgment (115 & 119) are denied. Plaintiff's motions for summary judgment (124, 128 and 137) are granted. Plaintiff's motion for partial summary judgment (134), and plaintiff's motion to strike (162) are denied. The docket clerk is directed to terminate docket entries, 195-1, 196-1, 201-1 and 202-1 as moot. Pretrial order will be due by 11/30/04; and response to any motions in limine by 12/14/04. Status hearing set for 12/10/04 at 10:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 6 | Document Number |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 0 3 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | 212 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 11/2/2004 | | |
| | | | 2004 NOV -2 PM 4:51 | date mailed notice | |
| MPJ | courtroom deputy's initials | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

**DEPUY, INC.**, a Delaware )
corporation, )
                 )
        Plaintiff, )
                 )
    v. )    No. 02 C 4023
                 )
**ZIMMER HOLDINGS, INC.**, a )
Delaware corporation, and )
**ZIMMER, INC.**, a Delaware )
corporation, )
                 )
        Defendants. )

**DOCKETED**

NOV 0 3 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff DePuy, Inc. ("DePuy") alleges that defendants Zimmer

Holdings, Inc. and Zimmer, Inc. (collectively, "Zimmer") have

infringed its patent No. 5,370,706 (the "'706 Patent"). The then

pleaded claims and defenses of the parties and the court's initial

construction of the patent claims invoked are set forth in my

published memorandum opinion and order, *DePuy, Inc. v. Zimmer*

*Holdings, Inc.*, 276 F. Supp. 2d 910 (N.D. Ill. 2003). On March 12,

2004, I entered a minute order granting DePuy's motion for

reconsideration of a portion of my prior opinion insofar as it

dealt with construction of the limitation "different size and

shape" as used in the '706 Patent. I also granted leave to Zimmer

to file a supplemental amended answer, affirmative defenses and

counterclaims in response to the complaint. I will not restate the

facts and claims of the parties except as may be necessary for an understanding of the rulings set forth below.

The '706 Patent concerns a hip replacement prosthesis system consisting of multiple pieces which can be interchangeably fitted together to form an appropriately-sized prosthesis. DePuy alleges that Zimmer's ZMR Hip System, which also consists of a multiple-piece hip prosthesis system, infringes the '706 Patent.

Before the court are the following motions: Zimmer seeks summary judgment on the alternative grounds that its system does not infringe the '706 Patent and that the Patent is invalid. DePuy's cross-motions for partial summary judgment ask this court to rule as a matter of law that the '706 Patent is not invalid on the basis of two pieces of prior art, that Zimmer cannot establish its defense of inequitable conduct, and that Zimmer cannot establish its defense of patent misuse or its antitrust counterclaim. DePuy also moves to strike and exclude from evidence certain documents which Zimmer offers as proof that the '706 Patent is invalid for anticipation and obviousness. Zimmer asks this court to rule on certain issues relating to licensing and remedies.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in

the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## I.

The claims that DePuy alleges Zimmer has infringed are as follows:

> 1.[1] A kit for the assembly of a modular bone joint prosthesis for the replacement of a head, neck, and adjacent portions of a bone, the kit comprising at least two stems, with each stem sized for insertion into a cavity of the bone, at least two bodies, with each body sized to replace a portion of the bone, and with each body configured to be joined in fixed attachment to one of the at least two stems, at least two head members, with each head member sized to replace a head portion of the bone, and means for fixedly attaching one of the at least two head members to one of the at least two bodies.
>
> 11. The Kit of claim 1, wherein one of the at least two stems has a different size and shape as another of the at least two stems.
>
> 12. The Kit of claim 1, wherein one of the at least two bodies has a different size and shape as another of the at least two bodies.
>
> 13. The Kit of claim 11, wherein one of the at least two bodies has a different size and shape as another of the at least two bodies.

Zimmer argues that its product has no "means for fixedly attaching" a head to a body, as specified by claim 1. DePuy

---

[1] DePuy argues that it only alleges Zimmer to have infringed claims 11-13, not claim 1. However, claims 11-13 are dependent on claim 1, and dependent claims are not infringed unless the claim on which they depend has been infringed. *35 U.S.C. § 112, § 4; Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000).

alleges that Zimmer's product has a piece, an integrated body and neck, that provides the means for attaching the body to a head.

An infringement analysis involves two steps. *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001). First, the court must, as a matter of law, determine the scope and meaning of the claims through claim construction. *Id.* Second, the properly construed claims must be compared to the allegedly-infringing device. *Id.* A means-plus-function claim limitation, such as the one challenged here, is subject to the requirements of 35 U.S.C. § 112, ¶ 6. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999). "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Id.* at 1267. Whether an accused device meets the requirements for equivalence under § 112, ¶ 6 is a question of fact. *Id.* at 1268.

The function here is not in dispute: a means for fixedly attaching a head to a body. However, the parties raise a question of material fact as to the rest of the § 112, ¶ 6 test: the "way" the structures in the '706 Patent and the accused device fulfill the function (if at all), and the "result." *See Odetics*, 185 F.3d at 1267. Zimmer argues that the integrated body-neck offered in its product is structurally and functionally different from the

4

integrated head-neck and separate neck options offered within the specifications of the '706 Patent. DePuy offers testimony that any differences are insubstantial, bringing the Zimmer device within the range of § 112, ¶ 6 equivalents. This question of fact is normally for the jury.

Zimmer argues, however, that DePuy has disclaimed the integrated body-neck and cannot therefore now claim that such a structure is within the scope of the '706 Patent. Claims may not be expanded to include structures that were disclaimed, expressly or implicitly. *Scimed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001). DePuy never expressly disclaimed an integrated body-neck structure, but noted the disadvantages of that option as compared to DePuy's preferred option of a separate neck. DePuy's language merely points out the advantages of its preferred embodiment of its invention, rather than stating that prior embodiments were unsuited for or unable to perform the function. This is neither an explicit nor an implied disclaimer. *Clearstream Waste Systems, Inc. v. Hydro Action, Inc.*, 206 F.3d 1440, 1444 (Fed. Cir. 2000)(means-plus-function language may cover prior art rather than only an inventive structure disclosed in the patent, even though the patent critically distinguishes the prior art). The '706 Patent is not limited solely to a configuration with a separate neck; a configuration with an integrated head-neck is explicitly within the scope of the

claim, and a configuration with an integrated body-neck may well be an equivalent structure. Zimmer's motion for summary judgment that its ZMR Hip System does not infringe the '706 Patent is denied.

II.

Zimmer also moves for summary judgment on the ground that the '706 Patent is invalid in light of prior art not disclosed to the Patent Office. DePuy counters with a cross-motion, seeking exclusion of the alleged prior art as a matter of law.

A.

As a preliminary matter, DePuy moves to exclude a declaration by Gabriele Lualdi, Mr. Lualdi's deposition testimony from earlier litigation by DePuy over the '706 Patent, and certain brochures, referred to as the "Lima LTO brochures" or "Lima brochures" which are the subject of Mr. Lualdi's declaration and deposition. DePuy argues that all three evidentiary sources should be excluded as hearsay; if not, DePuy argues they should be excluded as untimely disclosed.

While the declaration and deposition of Mr. Lualdi may potentially be excluded from trial, Rule 56 provides that I may consider affidavits and depositions in addition to the pleadings and certain other materials when considering a motion for summary judgment. FED. R. CIV. P. 56(c, e); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 604-05 (7th Cir. 2000). I may also consider properly authenticated documents, such as the Lima LTO brochures which are

6

authenticated by Mr. Lualdi's testimony. *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003). For purposes of this motion, I decline to exclude the Lualdi declaration and deposition testimony on the ground of hearsay.

DePuy argues that these documents, proffered as proof of prior art, should be excluded, regardless of their admissibility, because they were untimely disclosed. DePuy first relies on Judge Lindberg's oral statement of February 20, 2003, that evidence timely disclosed is "in" and evidence untimely disclosed is "out." However, both parties continued to disclose documents and depose witnesses until well after the official close of discovery on February 5, 2003. More importantly, Zimmer clearly identified Mr. Lualdi and the documents he identified at his deposition in a supplemental answer to interrogatories prior to the scheduled close of discovery.

DePuy's claim that it has been prejudiced by untimeliness of disclosure is belied by the record. The Lualdi Deposition was taken on February 11, 1997 by the defendant in the case of *DePuy, Inc. v. Biomet, Inc.* That litigation was also brought for alleged infringement of the '706 Patent. Lawyers for DePuy were present at the Lualdi Deposition and cross-examined the deponent at length. Deposition Tr., Exhibit E to Elizabeth A Werner's Declaration in Support of Zimmer's Memorandum in Opposition to DePuy's Motion for Partial Summary Judgment on the Lima LTO Brochures.

7

DePuy's motion to exclude Mr. Lualdi's declaration and deposition, and the Lima LTO brochures for untimeliness of production is denied.

B.

Zimmer's motion for summary judgment argues that the '706 Patent is invalid because prior art — the Lima LTO brochures, a brochure referred to by the parties as the "Kotz brochure", and excerpts from a book by Dr. Edmund Yee-Su Chao — not disclosed to the Patent Office either anticipated or made obvious the invention claimed by the '706 Patent. DePuy's cross-motion asks the court to rule as a matter of law that the Lima LTO brochures and the Kotz brochure are not prior art to the '706 Patent. DePuy also argues that, to the extent any of Zimmer's sources are prior art, Zimmer has not shown that the '706 Patent was not anticipated or made obvious by them.

Zimmer argues that the '706 Patent should be held invalid because of the "printed publication" bar, found in 35 U.S.C. § 102. Section 102 states:

> A person shall be entitled to a patent unless –
> (b) the invention was patented or described in a printed publication in this or a foreign country ... more than one year prior to the date of the application for patent in the United States.

Zimmer and DePuy agree that the relevant date under the statute is August 15, 1985. DePuy argues that the Lima LTO brochures and another brochure, called "the Kotz brochure," do not

8

qualify as "printed publications," and that there is insufficient evidence of publication and distribution date.

Zimmer, as the proponent of the publication bar, must show by clear and convincing evidence that the document in question was sufficiently available to the public more than one year before the date of application. *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936 (Fed. Cir. 1990).

With respect to the Lima LTO brochures, DePuy relies on the arguments for excluding the declaration and deposition of Mr. Lualdi rejected above. The Lualdi deposition provides evidence that at least 1,000 of the brochures were printed and that those brochures were distributed to medical professionals and at European scientific meetings and conventions more than a year prior to August 15, 1985. DePuy's motion to strike and exclude the Lima LTO Brochures for lack of proof of timeliness and extent of publication is denied.

I agree, however, with DePuy's argument that the evidence regarding publication of the Kotz brochure does not provide a sufficient basis upon which to invalidate the '706 Patent under the printed publication bar. Zimmer offers the testimony of Al Zarnowski, a representative for Howmedica, the corporation that produced the Kotz brochure. Mr. Zarnowski was designated as a Rule 30(b)(6) witness for Howmedica, allowing him to testify not only from his personal knowledge but also as to matters "known or

reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Even with this expanded basis for testifying, Mr. Zarnowski's testimony is not sufficiently clear and convincing to allow the Kotz Brochure as a printed publication under § 102 or to support a grant of summary judgment in favor of Zimmer. Mr. Zarnowski testified as to his assumptions about the printing and distribution of the Kotz brochure, but did not support those assumptions with either personal knowledge or knowledge gained from examining Howmedica's records or questioning other Howmedica employees. Assumptions such as these do not provide clear and convincing evidence of date and extent of publication. *See, e.g., AT&T Corp. v. Microsoft Corp.*, No. 01-C4872, 2004 WL 292321, at *6 (S.D.N.Y. Feb. 17, 2004); *Aluminum Co. of Amer. v. Reynolds Metal Co.*, No. 88-C6019, 1989 WL 165064, at *3-4 (N.D. Ill. Dec. 21, 1989)(evidence that document might have been available to the public insufficient). DePuy's motion for summary judgment that the Kotz brochure is not a printed publication under § 102 is granted.

Zimmer argues that the '706 Patent was anticipated or made obvious by the Lima LTO brochures and the Chao excerpt. Patents are presumed valid; Zimmer must show facts establishing invalidity by facts supported by clear and convincing evidence. 35 U.S.C. § 282; *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002). To show that a patent was anticipated by prior art, Zimmer must show that the prior art contained every limitation of

10

the contested claims. *Id.* Anticipation is a question of fact.
*Id.*

DePuy argues that neither source teaches the "different size
and shape" limitation and therefore neither source anticipates the
'706 Patent. Zimmer argues in response that all three sources
reflect the different size and shape limitation. Both parties
present credible evidence regarding the teachings of the alleged
prior art, raising a question of fact for a jury to decide.

DePuy also argues that Zimmer has failed to offer any evidence
of motivation and therefore cannot establish a *prima facie* case of
obviousness. A patent is invalid for obviousness if the teachings
of the patent would have been obvious to a person having ordinary
skill in the relevant art, given the existence of the prior art.
*Beckson*, 292 F.3d at 725. To prevent the use of hindsight in
evaluating obviousness, the party challenging the patent must show
a motivation to combine or move beyond the prior art. *Id.* at 727-
28. While Zimmer provides evidence suggesting that it would not
have been difficult to move beyond the prior art to the teachings
of the '706 Patent, it provides no evidence as to any motivation
for doing so. Zimmer's motion for summary judgment on the grounds
of invalidity is denied.

III.

Zimmer asserts an affirmative defense of inequitable conduct
by DePuy. DePuy moves for summary judgment on this defense,

11

arguing that Zimmer cannot prove the intent element of the defense. To establish the defense of inequitable conduct, Zimmer must prove (1) the existence of material prior art; (2) DePuy's knowledge of the prior art and its materiality; and (3) DePuy's failure to disclose that prior art with intent to mislead. *Fox Indus. Inc. v. Structural Preservation Sys.*, 922 F.2d 801, 803 (Fed. Cir. 1991).

Zimmer states that DePuy knew of and failed to disclose the Kotz brochure, the Lima LTO brochures, and Dr. Chao's book. However, Zimmer only specified the Kotz brochure when it pleaded the affirmative defense; it did not mention the other two pieces. Inequitable conduct must be pleaded with particularity, pursuant to Rule 9(b). FED. R. CIV. P. 9(b); *Safe Bed Tech. Co. v. KCI USA, Inc.*, No. 02-C0097, 2003 WL 21183948, at *2 (N.D. Ill. May 20, 2003). As Zimmer only specified the Kotz brochure in its pleading, but for the fact that DePuy raised all three references itself in furtherance of its own motion for summary judgment, I would not consider the other two references on this motion. They do not alter the result.

Although Zimmer makes much of the fact that in certain cases, courts have found inequitable conduct on the basis of indirect or circumstantial evidence, the cases it cites for that proposition were all ones in which the court found, on the basis of admissions or undisputed evidence, that the parties responsible for prosecuting the subject patent applications had actual knowledge of

12

relevant prior art that was not submitted to the patent office during the period prior to issuance of the patents.[2]

DePuy argues that Zimmer, despite vigorous examination of witnesses in lengthy depositions and the availability of transcript from relevant prior litigation, has not proved and cannot prove that the individuals involved with the prosecution of the '706 Patent had actual knowledge of any of Zimmer's references prior to December 6, 1994, the date on which the '706 Patent issued. I agree.

Testifying in a prior litigation in 1996, all three inventors stated that they had not seen the Lima LTO Brochures until at least one year after the '706 Patent issued, and attorney Coffey testified in this action that he had not seen the Lima LTO Brochures until his preparation for a November 2002 deposition.

Similarly, there is no direct evidence offered by Zimmer to establish that the three inventors or Mr. Coffey ever saw the Chao Excerpt prior to issuance of the '706 Patent.[3]

_____

[2] *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.Cir. 28 (Fed.Cir. 1999)(undisputed actual knowledge of withheld prior art); *Bristol-Myers Squibb v. Rhone-Poulenc Rorer*, 326 F.3d 1226, 1239-40 (Fed.Cir. 2003) (miscited by Zimmer as "Jackson") (evidence of actual knowledge undisputed);*Akron Polymer Container Corp. v. Exxcel Container, Inc.*, 148 F.3d 1380 (Fed. Cir. 1988)(attorney prosecuting application disclosed the prior art in connection with a contemporaneous , separate application); *GFI Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed.Cir. 2001) (knowledge of withheld prior art undisputed).

[3] I excluded consideration of the Kotz brochure for purposes of § 102 because of the lack of evidence that it had been printed

Under Zimmer's offered evidence, a jury could not find clear and convincing evidence of an intent to deceive. DePuy's motion for summary judgment on Zimmer's defense of inequitable conduct is granted.

## IV.

DePuy seeks summary judgment on Zimmer's affirmative defense of patent misuse[4] and its counterclaim for violation of the antitrust laws. To the extent that the motion deals with the misuse defense, both parties engage in a largely irrelevant debate.

DePuy's contention is that to withstand summary judgment on the defense and the counterclaim, Zimmer must raise a material issue of fact with respect to both a relevant market and DePuy's

---

or distributed before August 15, 1985. But even if it were prior art, while Zimmer's argument with respect to the Kotz Brochure is that it was well-known in the industry, it provides no evidentiary support for that statement. Inventors Bolesky and Smith testified that they did not see the Kotz Brochure until after the '706 Patent issued. Zimmer notes that inventor Charles Whitcraft, in his deposition, stated that he had seen the Kotz brochure sometime "in the past." Mr. Whitcraft's deposition was taken November 20, 2002. While his statement proves he saw the Kotz brochure before the date of the deposition, it does not prove that he saw it prior to the issuance of the '706 Patent. Finally, Zimmer points out that attorney William R. Coffey stated in his deposition that if he had known about the Kotz brochure, he would have submitted it. This statement certainly does not prove that Mr. Coffey knew of the brochure and intentionally failed to submit it; if anything, it tends to prove the opposite.

[4] Zimmer styles its patent misuse pleading as a counterclaim. However, patent misuse is an affirmative defense, not a counterclaim. *See, e.g., B. Braun Med., Inc. v. Abbott Labs*, 124 F.3d 1419, 1427-28 (Fed. Cir. 1997).

14

monopoly power within that market. DePuy further points out that Zimmer has not proffered any expert evidence. Zimmer argues that DePuy fraudulently procured the '706 Patent and that, therefore, no proof need be tendered on either issue, <u>fraudulent procurement</u>[5] being a form of misuse in and of itself: i.e., . . . "it amounts to extend[ing] the economic effect [of the patent] beyond the scope of the patent grant." Zimmer Memorandum in Opposition at 5, quoting from *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Zimmer further contends that if proof of market power is required, it may be found in the testimony of DePuy's own witnesses, including its experts.

With respect to the affirmative defense of patent misuse, no analysis of market evidence is necessary, but not for the reason Zimmer suggests. The record shows that prior to filing the supplemental amended answer and counterclaims ("supplemental amended answer") on March 17, 2004, Zimmer filed three other iterations of an answer to the complaint.[6] In none of its responsive pleadings, including the supplemental amended answer, does Zimmer allege that the '706 Patent was "fraudulently procured." On the contrary, Zimmer has consistently pleaded and

---

[5] Emphasis added.

[6] Answer and Affirmative Defenses filed June 27, 2002; Answer and Amended Affirmative Defenses filed July 16, 2002; and Amended Answer, Affirmative Defenses and Counterclaims filed October 22, 2002.

argued that DePuy was guilty only of "inequitable conduct" in obtaining the patent. The argument based on "fraudulent procurement" comes too late (long after the close of discovery), and is outside the pleadings. It is also not supported by the record.

In Part III above, I granted DePuy's motion for summary judgment on Zimmer's affirmative defense of inequitable conduct because of Zimmer's failure to raise a material issue of fact with respect to intent to mislead the patent office. That defense requires that its proponent show by clear and convincing evidence that the patentee had knowledge of material prior art references which it withheld from the patent examiner. Zimmer's opposition to the inequitable conduct motion did not meet that standard of proof. The threshold test for evidence of fraudulent procurement is even higher. See *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed.Cir. 1998).

The evidence on which Zimmer relies in opposing summary judgment on patent misuse is largely the same evidence on which it relied in opposing summary judgment on the issue of inequitable conduct. The only other matter to which it refers is likewise inadmissible: DePuy brought law suits against three third parties for infringement of the '706 Patent which were settled by DePuy granting licenses to those defendants after the defendants put the validity of the patent in issue. Zimmer argues that by this conduct

16

DePuy has somehow admitted invalidity. Title 35 U.S.C. §
271(d)(3) specifically provides that

> No patent owner otherwise entitled to relief for
> infringement . . . shall be denied relief or deemed
> guilty of misuse or illegal extension of the patent right
> by reason of his having done one or more of the
> following: . . . (3) sought to enforce his patent rights
> against infringement or contributory infringement . . .

I decline to infer any patent misuse from DePuy's litigation
history. DePuy's motion for summary judgment on Zimmer's
affirmative defense of patent misuse is granted.

DePuy also argues that summary judgment should be granted in
its favor on Zimmer's counterclaim of antitrust law violations
because Zimmer is unable to prove monopoly power on the part of
DePuy.

> The offense of monopoly under § 2 of the Sherman Act has two
> elements: (1) the possession of monopoly power in the relevant
> market and (2) the willful acquisition or maintenance of that
> power as distinguished from growth or development as a
> consequence of a superior product, business acumen, or
> historic accident.

*Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 396-97 (7th Cir. 2000)

(citing *Eastman Kodak Co. v. Image Tech. Serv., Inc.*, 504 U.S. 451,

481 (1992)). Defining the relevant market is an essential

prerequisite to a showing of monopoly power. *Golan v. Pingel
Enter., Inc.*, 310 F.3d 1360, 1369 (Fed. Cir. 2002). Such a market

has two components: a relevant product market and a relevant

geographic market. *Id.* Zimmer, who bears the burden of proof,

claims that the relevant product market is the "modular revision hip prosthesis" market.[7]

DePuy argues that Zimmer has not met its burden on this issue, primarily because Zimmer has presented no expert testimony regarding the relevant market. While the Seventh Circuit has yet to address this issue, a number of other circuits have held that expert testimony is required as a matter of law on the complex economic question of what constitutes a relevant market. *See, e.g., Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002); *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991); *Military Servs. Realty, Inc. v. Realty Consultants of Va., Ltd.*, 823 F.2d 829, 832 (4th Cir. 1987). *But see General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987); *Bacchus Indus., Inc. v. Arvin Indust.*, 939 F.2d 887, 894 (10th Cir. 1991).

Even without adopting the rule of other circuits which require expert testimony, Zimmer cannot withstand summary judgment. To survive summary judgment, Zimmer must present "admissible evidence that is sufficient for a jury to find that the proposed relevant market[] [is] accurate." *Menasha Corp. v. News America Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024, 1033 (N.D. Ill. 2003). A relevant market is defined by "the reasonable interchangeability of

---

[7]     Zimmer claims that the relevant geographic market is the United States; DePuy does not challenge that claim.

use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

In support of its definition of the relevant market as the "modular revision hip prosthesis" market, Zimmer offers the testimony of one of its marketing officers, David Weidenbenner, and experts from both DePuy and Zimmer who analyzed the issue of damages from the alleged infringement, Creighton G. Hoffman and Daniel M. McGavock.[8] Zimmer makes a number of conclusory statements about how their chosen definition is appropriate as representing a specific segment of the market, and that its product is primarily used in that market. The reports of Mr. Hoffman and Mr. McGavock, however, explain that there are two types of hip prostheses, modular and non-modular, and two types of surgery, primary and revision. Zimmer offers no evidence that modular and non-modular prostheses are never interchangeable, nor that modular prostheses are never used in primary surgeries. In fact, the proffered report from Zimmer's expert suggests the opposite – that non-modular prostheses are used more frequently in revision

---

[8] The relevance of these experts' reports is questionable, as neither expert analyzed a relevant market for antitrust purposes. *See Berlyn, Inc. v. Gazette Newspapers*, 223 F. Supp. 2d 718, 729 (D. Md. 2002). Mr. Weidenbenner's testimony is also of questionable value, as his comments are from the perspective of marketing efforts, not antitrust analysis. *See Independent Ink, Inc. v. Trident, Inc.*, 210 F. Supp. 2d 1155, 1170 (C.D. Cal. 2002).

surgeries than modular prostheses, and that modular prostheses are used in both primary and revision surgeries. This would argue in favor of a broader definition of the relevant market than the one suggested by Zimmer. Zimmer does not provide evidence from which a jury could reasonably find that its narrow definition of the relevant market is correct. DePuy's motion for summary judgment on Zimmer's antitrust counterclaim is granted.

V.

Zimmer's last motion seeks a ruling from this court as to its obligations under a license for products under the '706 Patent which it has allegedly obtained through the purchase of another company, as well as the effects of that license on DePuy's potential remedies for infringement.

Zimmer does not allege that it is the direct holder of the license. As far as I can determine from the record, that license is still the property of one of the corporate entities, all of whose capital stock Zimmer now owns directly or indirectly. Putting aside for the moment the question of whether Zimmer has standing to assert the license as a defense, there is a constitutional impediment to the court attempting to decide the question Zimmer raises.

DePuy argues that the rulings Zimmer seeks would constitute an advisory opinion. Article III of the United States Constitution requires that a genuine case or controversy must exist before I may

issue an opinion. *See, e.g. Continental Casualty Co. v. Southern Co.*, 284 F. Supp. 2d 1118, 1121 (N.D. Ill. 2003). A genuine case or controversy

> must be definite and concrete, touching the legal relations of parties having adverse interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.

*Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

While no bright line exists to separate genuine controversies from advisory opinions, the ruling Zimmer seeks is more consistent with the latter. Zimmer asks: if it holds this license, and if Zimmer's product is held to infringe the '706 Patent, and if Zimmer refuses to mark its product or pay DePuy royalties, what then happens under the terms of the license? This sort of hypothetical situation leads to the advisory opinions I must avoid under Article III. Zimmer's motion is denied.

VI.

For the reasons stated in this opinion, Zimmer's motions for summary judgment of noninfringement and invalidity of U.S. Patent No. 5,370,706 are denied. DePuy's motion to exclude consideration of evidence by Gabriele Lualdi and the Lima LTO brochures is denied. DePuy's motion to exclude consideration of evidence of the Kotz brochure is granted. DePuy's motion for summary judgment on Zimmer's affirmative defenses of inequitable conduct and patent

21

misuse and Zimmer's antitrust counterclaim are granted. Zimmer's motions in limine with respect to its obligations under a license and possible remedies are denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: November 2, 2004